UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Louis Corrigan, Sr.,   File No. 24-cv-4523 (ECT/DTS)

    Plaintiff,

v.   **OPINION AND ORDER**

Scott County Minnesota, Judge Paula Vraa,
and Judge Colleen G. King,

    Defendants.

---

John Louis Corrigan, Sr., Pro Se.

James R. Andreen and Samantha R. Alsadi, Erstad & Riemer, P.A., Minneapolis, MN for Defendant Scott County.

Matthew Anthony McGuire, Office of the Minnesota Attorney General, Minneapolis, MN, for Defendants Judge Paula Vraa and Judge Colleen G. King.

---

    This is the latest in a series of cases involving pro se Plaintiff John Louis Corrigan, Sr., and his son, John, Jr.  It all began with John, Jr.'s 2016 stalking conviction.  John, Jr. sought to reverse his conviction, first on direct appeal and then through collateral challenges.  When those didn't work, Mr. Corrigan filed a case in Minnesota state court seeking to challenge the constitutionality of the stalking statute under which his son was convicted, Minn. Stat. § 609.749.  When that didn't work, Mr. Corrigan brought this case.  Here, he claims that two subdivisions of the stalking statute violate the First Amendment, and he claims that he received unconstitutional treatment during the adjudication of his state case.  He seeks damages, among other relief.

Defendants—the County in which John, Jr. was convicted and in which Mr. Corrigan brought his first case challenging the stalking statute's constitutionality and two judges who ruled in Mr. Corrigan's case—seek dismissal on jurisdictional and merits grounds. The motions will be granted. Mr. Corrigan lacks Article III standing to bring his First Amendment challenges, meaning these claims must be dismissed for lack of subject-matter jurisdiction. Mr. Corrigan's claims that the state court acted unconstitutionally fail on immunity, jurisdictional, and merits grounds. A separate Rule 11 motion brought by Mr. Corrigan will be denied.

I

The following facts are drawn from the Complaint and from public records to the extent the Complaint does not allege something different. In 2016, John, Jr. was convicted of stalking in Scott County under Minn. Stat. § 609.749, subdiv. 2(2) (2016). Compl. [ECF No. 1] ¶ 7; *see Corrigan v. State*, No. A23-1555, 2024 WL 2722574, at *1 (Minn. Ct. App. May 28, 2024), *review denied*, (Sep. 17, 2024). John, Jr. appealed his conviction, and the Minnesota Court of Appeals affirmed. Compl. ¶ 7. John, Jr. then filed successive postconviction petitions, all of which were denied by the district court, and the denials were affirmed by the Minnesota Court of Appeals. *Id.* ¶¶ 7, 10–12; *Corrigan*, 2024 WL 2722574, at *1. John, Jr. also filed a civil action in federal district court in which he "sued the district court judge who presided over his trial, the prosecutor, the police officers involved in his case, the victim, the Scott County Sheriff, the City of Savage, and Scott County, arguing that the defendants had violated his constitutional rights." *Corrigan*, 2024 WL 2722574, at *1; *see Corrigan v. City of Savage*, No. 18-cv-2257 (ADM/BRT), 2019

WL 1487897, at *1 (D. Minn. Apr. 4, 2019), *aff'd*, 786 F. App'x 614 (8th Cir. 2019).  The federal lawsuit was dismissed.  *Corrigan*, 2024 WL 2722574, at *1; *City of Savage*, 2019 WL 1487897, at *5.

On November 30, 2022, Mr. Corrigan sued in Scott County District Court to raise a First Amendment challenge to Minn. Stat. § 609.749, subdiv. 2(2) (2016) and subdiv. 2(c)(2) (2022).  Compl. ¶ 14; *Corrigan*, 2024 WL 2722574, at *1.  Mr. Corrigan filed a motion for a change of venue of this action because he "believe[ed] he could not get a fair hearing in Scott County."  Compl. ¶ 17.  Despite "allegations of *fraud on the court*," Judge King denied the motion.  *Id.*  The State of Minnesota moved to dismiss Mr. Corrigan's claim, and Judge Vraa granted the motion on August 18, 2023.  *Id.* ¶¶ 15–16.  The Minnesota Court of Appeals affirmed the denial of Mr. Corrigan's motion to change venue as well as the dismissal of his claim.  *Id.* ¶ 19; *see Corrigan*, 2024 WL 2722574.  Mr. Corrigan petitioned the Minnesota Supreme Court to review the Court of Appeals's decision, but this request was denied.  Compl. ¶ 20.

In this case, Mr. Corrigan's claims fall in three categories.  (1) In his first two claims, Mr. Corrigan asserts that Minn. Stat. § 609.749, subdiv. 2(2) (2016) and subdiv. 2(c)(2) (2023) violate the First Amendment because they are "vague and overbroad."  Compl. ¶¶ 29, 31.  He also alleges these provisions violate the Fifth and Fourteenth Amendments, but he does not say why.  Compl. at 15 ¶¶ B–C.  (2) Mr. Corrigan next claims that Judge King and Judge Vraa violated his due process rights by ruling against him in his 2022 Minnesota state court case and engaging in fraud on the court.  *Id.* ¶¶ 33, 37, 45.  He claims the judges—and other non-parties—are involved in a conspiracy to "deny John Jr. and John

3

Sr's [sic] due process" rights. *Id.* ¶ 45 & n.12. (3) Mr. Corrigan claims that Scott County is liable for the judges' alleged misconduct by negligently "failing to properly train, supervise and control [their] conduct" and by virtue of being their employer. *Id.* ¶¶ 34–35, 38–39, 42–43, 47–48.

II

A

A court reviewing a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) must first determine whether the movant is making a "facial" attack or a "factual" attack. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015). Here, Defendants make a facial attack to subject-matter jurisdiction because they accept as true all of Mr. Corrigan's factual allegations relevant to jurisdiction. *See Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). A court analyzing a facial attack "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted).

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility

4

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[P]ro se complaints are to be construed liberally, [but] they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citations omitted).

B

1

Defendants move to dismiss the First Amendment challenges to Minn. Stat. § 609.749, subdiv. 2(2) (2016) and subdiv. 2(c)(2) (2023), arguing that Mr. Corrigan does not have standing to pursue this claim. ECF No. 12 at 12–15; ECF No. 19 at 7–8. Mr. Corrigan counters that he has standing to bring a First Amendment overbreadth claim on behalf of third parties under *Broadrick v. Oklahoma*, 413 U.S. 601 (1973). ECF No. 23 at 6.

The United States Constitution limits the subject-matter jurisdiction of federal courts to ongoing cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1. "Therefore, the plaintiff's standing to sue 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'" *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury will likely be redressed by a favorable decision." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). At this stage, Mr. Corrigan must allege facts

plausibly showing he possesses Article III standing. *See Jones v. Jegley*, 947 F.3d 1100, 1103 (8th Cir. 2020); *see also Rodgers v. Bryant*, 942 F.3d 451, 454–55 (8th Cir. 2019).

Several rules apply to answer whether Mr. Corrigan suffered an Article III-worthy injury. An injury-in-fact is the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). Regarding First Amendment claims specifically, the Eighth Circuit explained:

> There are two types of injuries conferring standing for prospective First Amendment relief. *See Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016). The first occurs when a plaintiff alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). The second occurs when a plaintiff self-censors. *Id.* (citing 281 *Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011)). Self-censoring occurs when a plaintiff alleges it "would like to engage in arguably protected speech, but that [it] is chilled from doing so by the existence of the statute." *Arneson*, 638 F.3d at 627.

*Dakotans for Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022). To show a credible threat of prosecution for Article III purposes, a plaintiff need not "actually violate[]" the challenged statute or "risk prosecution." *Jegley*, 947 F.3d at 1104. "[W]hen a course of action is within the plain text of a statute, a 'credible threat of prosecution' exists." *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019). "Total lack of enforcement of a statute" may defeat a plaintiff's attempt to show a credible threat of prosecution, "but only in extreme cases approaching desuetude." *Arneson*, 638 F.3d at 628

(citing *St. Paul Area Chamber of Com. v. Gaertner*, 439 F.3d 481, 486 (8th Cir. 2006)); *see also Jegley*, 947 F.3d at 1104 (recognizing that a plaintiff's fear of consequences and self-censorship is reasonable "as long as there is no 'evidence—via official policy or a long history of disuse—that authorities' have 'actually' refused to enforce [the] statute" (quoting *Arneson*, 638 F.3d at 628)). Self-censorship based on the chilling effect of a statute is a sufficient injury in fact so long as the plaintiff's fear of consequences is "objectively reasonable." *Arneson*, 638 F.3d at 627 (quoting *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009)).

Mr. Corrigan alleged no facts showing that he intended to engage in a course of conduct but feared threat of prosecution under either version of Minn. Stat. § 609.749. *See generally* Compl. Nor has he alleged any facts that his speech was chilled due to the statute. *See generally id.* It is not possible to distinguish Mr. Corrigan's situation from that of any other American—Mr. Corrigan is a resident of Washington State, Compl. ¶ 3—who might think the challenged statute is unconstitutional in some respect. In this situation, Mr. Corrigan's avenue for redress is the legislature. Article III forbids him from bringing this grievance to the federal courts.[1]

Contrary to Mr. Corrigan's suggestion, the overbreadth doctrine does not give him standing. *See* Compl. ¶¶ 18 n.8, 29 n.10; ECF No. 23 at 6. The overbreadth doctrine does

---

[1] Mr. Corrigan seeks a declaration that Minn. Stat. § 609.749, subdiv. 2(2) (2016) and subdiv. 2(c)(2) (2023) violates the First, Fifth, and Fourteenth Amendments. Compl. at 15 ¶¶ B, C. Mr. Corrigan never explains his Fifth and Fourteenth Amendment theories. Regardless, Mr. Corrigan's failure to allege injury means he lacks standing to pursue these challenges, too.

not do away with the Article III injury requirement. *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 799 (8th Cir. 2006) ("Under no circumstances, however, does the overbreadth doctrine relieve a plaintiff of its burden to show constitutional standing."); *see also Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004); *Bigelow v. Virginia*, 421 U.S. 809, 816–17 (1975). The overbreadth doctrine merely allows "litigants whose own speech could constitutionally be regulated to challenge overly broad regulations which affect them." *Advantage Media*, 456 F.3d at 799 (citing *Broadrick*, 413 U.S. at 611–12). In other words, once a litigant meets the fundamental standing requirements of injury, causation, and redressability, they may challenge a statute as prohibiting a substantial amount of protected speech even though their own speech remains unprotected. *Republican Party of Minn.*, 381 F.3d at 792. Mr. Corrigan lacks Article III standing to challenge Minn. Stat. § 609.749.[2]

---

[2] If the First Amendment claims were not dismissed for lack of standing, Scott County argues they should be dismissed on res judicata grounds based on the dismissal of Mr. Corrigan's 2022 Minnesota state court case. ECF No. 19 at 7–8. The judges argue the claims should be dismissed based on issue preclusion. ECF No. 12 at 10–11. "In determining whether res judicata applies, the law of the forum that rendered the first judgment controls the res judicata analysis." *Schwartz v. Bogen*, 913 F.3d 777, 781 (8th Cir. 2019) (cleaned up). The same is true for collateral estoppel. *See Est. of Smith ex rel. Smith v. Primerica Life Ins. Co.*, 54 F.4th 550, 556 (8th Cir. 2022). Under Minnesota law, res judicata and collateral estoppel require the potentially preclusive decision to have been a "final judgment on the merits." *Danielson v. Koronis Parts, Inc.*, No. A20-0975, 2021 WL 1343695, at *3 (Minn. Ct. App. Apr. 12, 2021) (quoting *Rucker v. Schmidt*, 794 N.W.2d 114, 117 (Minn. 2011); *Ill. Farmers Ins. Co. v. Reed*, 662 N.W.2d 529, 531–32 (Minn. 2003) (quotation omitted). Mr. Corrigan's 2022 state court case was dismissed for lack of standing. *Corrigan v. State*, 2024 WL 2722574, at *5. A dismissal for lack of standing does not qualify as a final judgment on the merits. *Goldberger v. Kaplan, Strangis & Kaplan, P.A.*, 534 N.W.2d 734, 736 n.1 (Minn. Ct. App. 1995).

2

Mr. Corrigan's claims that he received unconstitutional treatment in his prior state court case run into different problems. The first problem is judicial immunity. "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam). Judicial immunity "is not overcome by allegations of bad faith or malice." *Id.* "A judge is immune from suit, including suits brought under section 1983 . . . , in all but two narrow sets of circumstances." *Just. Network Inc. v. Craighead County*, 931 F. 3d 753, 760 (8th Cir. 2019) (quotations and citation omitted). "First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity." *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). "An act is a judicial act if it is [a function] normally performed by a judge and if the complaining party is dealing with the judge in [her] judicial capacity." *Id.*; *see Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 12 (citations omitted). "[T]he only type of relief available to a plaintiff who sues a judge is declaratory relief, *but not every plaintiff is entitled to this remedy*." *Just. Network Inc.*, 931 F.3d at 763–64 (quoting *Lawrence v. Kuenhold*, 271 F. App'x 763, 766 (10th Cir. 2008)). Because "[a] declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of *some future conduct*, not simply to proclaim liability for a past act," a complaint seeking retrospective declaratory relief from a judge "does not satisfy the definition of 'declaratory judgment' and renders declaratory relief unavailable." *Id.* at 764 (quoting *Lawrence*, 271 F. App'x at 766).

Accepting the Complaint's allegations as true, Mr. Corrigan's claims against Judge Vraa and Judge King challenging the constitutionality of his state-court treatment are barred by judicial immunity. The actions Mr. Corrigan complains of were unquestionably judicial. They are the functions normally performed by a judge and were taken in response to matters Mr. Corrigan presented to the court for adjudication. *See* Compl. ¶ 33 ("This Change of Venue Motion was denied by Judge King . . . ."); *id.* ¶ 37 ("[Judge Vraa's] decision to affirm the strange and unlawful motion to dismiss without adequate justification for the motion was a violation of John Sr.'s constitutional rights . . . ." (footnote omitted)). Mr. Corrigan does not argue that either judge lacked judicial power in the relevant sense. Mr. Corrigan, after all, chose to file suit in Scott County District Court. Though Mr. Corrigan hints that he does not seek damages against Judge Vraa or Judge King, *id.* ¶ 5 ("[Judge Vraa] is being sued in her official capacity for Declaratory Judgment only. She is not being sued for damages."); *id.* ¶ 6 (asserting the same with respect to Judge King), the Complaint includes a demand for "compensatory and punitive damages," *id.* at 16 ¶ G, from all Defendants. And the declaratory relief Mr. Corrigan seeks is properly characterized as retrospective, not prospective. He seeks declarations that the judges' actions and decisions violated his constitutional rights. *See* Compl. at 15–16 ¶¶ D–F. He nowhere seeks to prevent them from doing something prospectively. Judicial immunity bars Mr. Corrigan's claims against Judge Vraa and Judge King based on their actions in adjudicating Mr. Corrigan's prior state-court suit.

The second problem is the *Rooker-Feldman* doctrine.

> In the two decisions for which the doctrine is named, *Rooker v. Fidelity Trust Co.*, [263 U.S. 413 (1923)], and *District of Columbia Court of Appeals v. Feldman*, [460 U.S. 462 (1983)], the [Supreme] Court established the narrow proposition that with the exception of habeas corpus proceedings, the inferior federal courts lack subject-matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

*In re Athens/Alpha Gas Corp.*, 715 F.3d 230, 234 (8th Cir. 2013) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "This conclusion follows from 28 U.S.C. § 1257, which grants to the Supreme Court exclusive jurisdiction over appeals from state-court judgments." *Id.* at 234; *see also Exxon Mobil*, 544 U.S. at 283 ("Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction."). In *Exxon Mobil*, the Supreme Court noted that inferior federal courts had sometimes applied the *Rooker-Feldman* doctrine too broadly, "overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. § 1738," the Full Faith and Credit Act. *Exxon Mobil*, 544 U.S. at 283. To check the lower federal courts' enthusiasm for the *Rooker-Feldman* doctrine, the Supreme Court made clear that the doctrine applies only to cases filed in federal court by the losing party in state court "complaining of an injury caused by the state-court judgment" that "call[] upon the District Court to overturn an injurious state-court judgment." *Id.* at 291–92. Importantly, the Court also explained that § 1257 does not "stop a district court from exercising subject-matter

11

jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id.* at 293. "If a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.'" *Id.* (alterations in original) (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

In circumstances where a plaintiff alleges fraud, misconduct, or some constitutional violation in the state court proceedings, the pivotal question is whether the plaintiff seeks relief from the state court judgment or seeks some other relief for the misconduct or violation. *See Hageman v. Barton*, 817 F.3d 611, 614–15 (8th Cir. 2016); *MSK EyEs Ltd. v. Wells Fargo Bank, Nat'l Ass'n*, 546 F.3d 533, 539 (8th Cir. 2008). For example,

> [i]f a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Wells Fargo*, 546 F.3d at 539 (quoting *Riehm v. Engelking*, 538 F.3d 952, 965 (8th Cir. 2008)). In other words, *Rooker-Feldman* "does not bar jurisdiction over actions alleging independent claims arising from conduct in underlying state proceedings," *Hageman*, 817 F.3d at 614, but rather precludes "claims assert[ing] an injury caused by the state court judgments," such as "claim[s] that the state court judgments themselves are unconstitutional," *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir. 2006).

12

Here, Mr. Corrigan claims the state court decisions and judgments are unconstitutional, and he asks at least to some extent for a do-over, just the sort of thing *Rooker-Feldman* forbids. Among other relief, Mr. Corrigan asks for a declaration that prior state-court decisions were unconstitutional, and he asks for an order that at least one prior state-court case "be transferred out of Scott County . . . and moved to another county where it can be presented to unbiased and objective judges and prosecutors." Compl. at 16 ¶ F. It is difficult to understand this as anything but a demand that one or more of the prior state court adjudications be undone—in other words, that Mr. Corrigan or perhaps his son be granted relief from one or more of the prior judgments. To the extent Mr. Corrigan seeks this relief, *Rooker-Feldman* forbids it.

3

Assuming judicial immunity does not bar his *Canton*[3]/failure-to-train claim against the County, the claim would fail because as a legal matter the County did not (and does not) employ the judges. Mr. Corrigan claims Scott County is vicariously liable as the judges' employer, Compl. ¶¶ 35, 39, 43, 48, and because it "fail[ed] to properly train, supervise, and control the conduct of" the judges, *id.* ¶¶ 34, 38, 42, 47. The vicarious-liability theory is a nonstarter. "A Section 1983 claim against a municipality cannot be based on vicarious liability. But a municipality may be subject to Section 1983 liability if either the inadequate training of its employees, a municipal policy, or an unofficial municipal custom causes a constitutional injury." *Ash v. City of Duluth*, 331 F. Supp. 3d

---

[3]   *City of Canton v. Harris*, 489 U.S. 378 (1989).

13

935, 940 (D. Minn. 2018) (citations omitted). Here, Mr. Corrigan's *Canton* claim is based on the inaccurate premise that Scott County employs state judges. *See* Compl. ¶ 21 ("At all relevant times, the County trained, supervised, and employed its judges . . . ."). Minnesota state judges are employed by the State of Minnesota, not the County. *See Kaisamba-Kanneh v. Dakota Cnty. Dist. Ct.*, No. 22-cv-2661 (ECT/TNL), 2023 WL 1451561, at *3 (D. Minn. Feb. 1, 2023) (noting a state court is an arm of the state). Scott County cannot plausibly be liable for failing to train or supervise state judges.

C

Courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal. *Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sep. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting R. & R.), or when the record makes clear that any amendment would be futile, *Paisley Park*, 361 F. Supp. 3d at 880 n.7. On the other hand, when a plaintiff's claim "might conceivably be repleaded with success," dismissal without prejudice may be justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). This case falls in the former category. Though Mr. Corrigan has not had the opportunity to amend his Complaint in this case, he has had several chances to pursue his claims before. He did not request leave to amend. And he

14

has not identified factual allegations or legal theories that might be included in a second version of the pleading to overcome the Complaint's dismissal-worthy problems.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants Judge Vraa and Judge King's Motion to Dismiss [ECF No. 9] is **GRANTED**.

2. Defendant Scott County's Motion to Dismiss [ECF No. 17] is **GRANTED**.

3. Counts I, II, VII, and, to the extent they seek relief from or reversal of prior state court orders and judgments, Counts III, IV, V, and VI, are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

4. To the extent they do not seek relief from or reversal of prior state court orders and judgments, Counts III, IV, V, and VI are **DISMISSED WITH PREJUDICE**.

5. Plaintiff's Motion for Rule 11 Sanctions [ECF No. 30] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 7, 2025                              s/ Eric C. Tostrud
                                                 Eric C. Tostrud
                                                 United States District Court